**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JESSE BUNCH, *et al.*, | : | | |
| Plaintiffs, | : | Civil Action No.: | 22-2769 (RC) |
| | : | | |
| v. | : | Re Document No.: | 18 |
| | : | | |
| REPUBLIC OF SOUTH SUDAN, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiffs Jesse Bunch, Adam Levin, and Mark Renzi (collectively, "Plaintiffs") bring the instant action against Defendants the Republic of South Sudan, the South Sudan Ministry of Defence and Veteran Affairs, the South Sudan Ministry of National Security, and the South Sudan Presidential Guard (collectively, "South Sudan" or "Defendants") for injuries suffered as a result of the Terrain Hotel attack perpetrated by South Sudanese armed forces in July 2016. Defendants have filed a motion to dismiss Plaintiffs' complaint for lack of subject matter and personal jurisdiction, contending that, under the Foreign Sovereign Immunities Act ("FSIA"), South Sudan and its political subdivisions are immune to suit in the United States. For the reasons detailed below, the Court grants Defendants' motion to dismiss.

## II. BACKGROUND

### A. Factual Background[1]

On July 11, 2016, members of South Sudan's armed forces, including soldiers of the Sudan People's Liberation Army ("SPLA"), perpetrated a horrific assault on U.S. and international aid workers at a humanitarian aid compound in South Sudan called the Terrain Hotel.  Compl. ¶ 47, ECF No. 1.  Plaintiffs, who are all U.S. citizens, were among the victims.  *Id.* ¶¶ 1, 21–23.  At the time of the attack, Plaintiffs Jesse Bunch and Mark Renzi were employees of Management Systems International ("MSI"), an American consulting firm that focuses on international development; Plaintiff Adam Levin was an employee of Internews, an American non-governmental organization offering international development programs to support independent media.  *Id.* ¶¶ 2–3.  The Terrain Hotel was the primary residence for both MSI and Internews in South Sudan.  *Id.* ¶ 4.  Plaintiffs were threatened, held at gun point, terrorized, and assaulted by soldiers during the attack.  *See id.* ¶ 7.  A soldier shot Bunch in the leg through a door while he attempted to demonstrate that it would not open for the soldiers to enter.  *Id.* ¶ 52.  Plaintiffs also witnessed other horrific acts, including beatings and rape committed against female co-workers and acquaintances.  *Id.* ¶¶ 7, 115.  John Gatluak, a journalist with Internews and one of Levin's colleagues, was executed, and all three Plaintiffs saw his corpse.  *Id.* ¶¶ 7, 55, 62, 75.  The South Sudan Government eventually evacuated Plaintiffs.  *Id.* ¶ 8.

---

[1] Defendants "do not here challenge these factual allegations about events in South Sudan" for purposes of the motion to dismiss, but "reserve their right to challenge them should the case proceed on the merits."  Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mot.") at 3 & n.2, ECF No. 18.

South Sudan's Investigation Committee and the United Nations' Independent Special Investigation concluded that government soldiers had committed the attack. *Id.* ¶¶ 80–82. Further, an SPLA General Court Martial convicted ten "SPLA personnel" of murder, criminal trespass, theft, rape, and assault. *Id.* ¶¶ 10, 86. The court martial then found the South Sudan Ministry of Defence and Veterans Affairs civilly liable for the attack. *Id.* ¶¶ 10, 87. Though South Sudan was ordered to pay the owner of the Terrain Hotel $2 million for the property damage and lost earnings, it awarded only $1,000 to Bunch and no compensation to Renzi or Levin. *Id.* ¶ 10. Plaintiffs have sought to appeal the damages portion of the judgment, but the Supreme Court of South Sudan has yet to hear the appeal because the case file has gone missing. *Id.* ¶¶ 10–11. Despite years of discussion with the Government of South Sudan, and though South Sudan has paid the damages owed to the Terrain Hotel owners, South Sudan has not paid Plaintiffs any compensation. *Id.* ¶ 95.

### B. Procedural Background

Plaintiffs now seek to bring suit against Defendants in this Court and raise claims of assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention, training, and supervision. *Id.* ¶¶ 112–35. Bunch seeks $5 million for pain and suffering and $3,405,921 in economic damages and lost earnings, or a greater amount to be proven at trial. *Id.* ¶ 137. Renzi seeks $1.5 million for pain and suffering, or a greater amount to be proven at trial. *Id.* ¶ 138. Levin seeks $1.5 million for pain and suffering and $200,000 in economic damages or lost earnings, or a greater amount to be proven at trial. *Id.* ¶ 139.

Plaintiffs claim that South Sudan has waived its sovereign immunity to suit under the FSIA. *Id.* ¶ 17; Pls.' Mem. of P. & A. in Opp'n of Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 8,

ECF No. 19.  Plaintiffs rely in part on arguments made by plaintiffs (the "*Chang* plaintiffs") who were also victims of the Terrain Attack, *see* Compl. ¶¶ 14, 17, and who brought a separate suit that this Court dismissed earlier this year in *Chang v. Republic of S. Sudan*, No. 21-cr-1821, 2023 WL 2351726 (D.D.C. Mar. 3, 2023).  Though Bunch and Levin were originally represented by the lead counsel in *Chang* and "were part of all relevant negotiations and conversations taking place between [plaintiffs'] counsel and defendants," they eventually filed their separate claim at issue here.  Pls.' Opp'n at 5.

As explained in *Chang*, the *Chang* plaintiffs had several interactions with South Sudanese officials about their case.  According to the *Chang* plaintiffs, they sent a demand letter and draft complaint on March 22, 2021 to Counsel Biong Pieng Kuol, Advocate General of South Sudan in the Ministry of Justice and "the chief negotiator for South Sudan" in this case, via WhatsApp.  Compl. ¶ 97; Pls.' Opp'n at 5.  Counsel Kuol then responded, "Okay, well received."  Compl. ¶ 97.  On April 6, 2021, Counsel Kuol "informed [*Chang*] Plaintiffs' local counsel in South Sudan that the [*Chang*] Plaintiffs should bring their claims so that the case can be resolved."  *Id.* ¶ 98.  Then, on June 25, 2021, the "Legal Advisor to the President of South Sudan reiterated to [*Chang*] Plaintiffs' local counsel in South Sudan that the [*Chang*] Plaintiffs should bring their claims."  *Id.*  On July 8, 2021, counsel for Plaintiffs sent copies of the Complaint and exhibits to Counsel Kuol via WhatsApp, stating:

> I look forward to continuing our dialogue so that we can reach a just and speedy resolution to this matter.  Please confirm if you agree to service of documents, process, and correspondence via email.  This has been a convenient means of communication for all parties so far, and we hope that it can continue.

*Chang*, 2023 WL 2351726, at *2.  Counsel Kuol then responded, "Okay.  The Minister will find out the matter because we have letters of request to the money with the Presidential Affairs

4

Minister." *Id.*[2] On August 23, 2021, Plaintiffs purportedly served process on Counsel Kuol by email and provided a copy on WhatsApp. *Id.*; Compl. ¶ 99. Counsel Kuol replied, "Okay. Let me print out the documents and share it with the Minister." Compl. ¶ 99. According to Plaintiffs, they were also included by Defendants in an October 2021 settlement offer made to the *Chang* plaintiffs. *See id.* ¶ 102; *id*. Ex. E, ECF No. 1-7.

In addition to claiming that Plaintiffs Bunch and Levin should be understood to have been the subject of any waiver that might have resulted from these interactions between South Sudan and the *Chang* plaintiffs, Plaintiffs note two additional one-sided communications that they sent to South Sudanese officials regarding their claims. *See* Defs.' Mot. at 4; *see* Mem. Reply in Further Supp. of Defs.' Mot. to Dismiss ("Defs.' Reply") at 2–3, ECF No. 21; *see* Pls.' Opp'n at 5–6. First, on September 22, 2021, counsel for Plaintiffs wrote to the Office of the President of South Sudan, H.E. Salva Kiir Mayardit, regarding Plaintiffs' claims. Compl. ¶ 96. At the time, the suit included twelve victims and did not include Mark Renzi. *Id.* Ex. B at 1–4, ECF No. 1-2. The letter stated that the compensation previously awarded was not appropriate and that Plaintiffs intended to pursue legal remedy in the United States under the FSIA based on the waiver of sovereign immunity in *Chang*. *See id.* at 8–9. On July 23, 2022, counsel for Plaintiffs wrote a second letter, which "more clearly stated Plaintiffs' assertion that Defendants had explicitly waived sovereign immunity under the FSIA with respect to events arising from the Terrain Attack by encouraging victims who were 'dissatisfied with the Court Martial ruling to bring their claims' before a U.S. court." Pls.' Opp'n at 5; Compl. Ex. B-1 at 2, ECF No. 1-3. It

---

[2] Plaintiffs do not include this July 2021 interaction in their Complaint or in their opposition to the motion to dismiss, *see generally* Compl.; Pls.' Opp'n, but the Court includes it here because the *Chang* plaintiffs relied in part on this exchange in arguing that South Sudan waived sovereign immunity, *see Chang*, 2023 WL 2351726, at *2.

5

does not appear that South Sudan has responded to either of these two communications. *See* Compl. ¶ 13; *see* Pls.' Opp'n.

Plaintiffs filed their Complaint in the instant matter on September 13, 2022. *See generally* Compl. Defendants filed their motion to dismiss on January 5, 2023. *See generally* Defs.' Mot. Defendants' motion is now ripe for consideration.

### III. LEGAL FRAMEWORK

#### A. Foreign Sovereign Immunities Act

The FSIA "is the source of jurisdiction in federal court over claims against foreign states, their agencies, or their instrumentalities." *Hardy Expl. & Prod. (India), Inc. v. Gov't of India*, 219 F. Supp. 3d 50, 56 (D.D.C. 2016) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989)). This statute "codifies the concept of foreign sovereign immunity, something which is 'a matter of grace and comity on the part of the United States, and not a restriction imposed by the Constitution.'" *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 392 (D.D.C. 2015) (quoting *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 140 (2014)). As set out by the FSIA, "[a] foreign state is normally immune from the jurisdiction of federal and state courts, 28 U.S.C. § 1604, subject to a set of exceptions specified in §§ 1605 and 1607." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). It is well-established that "[t]he FSIA begins with a presumption of immunity, which the plaintiff bears the initial burden to overcome by producing evidence that an exception applies, . . . and once shown, the sovereign bears the ultimate burden of persuasion to show the exception does not apply[.]" *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 696 (D.C. Cir. 2022) (quoting *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013)).

6

Among other exceptions, the FSIA provides that a foreign state may waive its immunity "either explicitly or by implication." *Id.* at 690 (quoting 28 U.S.C. § 1605(a)(1)). The exceptions set forth by the FSIA to foreign sovereign immunity "provide the only authority for a district court to assert subject matter jurisdiction over claims against a foreign state." *Roth*, 78 F. Supp. 3d at 393. Thus, "[i]f no exception applies, the district court has no [subject matter] jurisdiction." *Id.* (citation omitted). "Under the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction.'" *Hardy*, 219 F. Supp. 3d at 56 (quoting *Prac. Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987)).

### B. Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004), and must therefore address jurisdiction as a "threshold matter," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "A court considering a Rule 12(b)(1) motion must assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting a plaintiff the benefit of all inferences that can be derived from the facts alleged." *McFadden v. Washington Metro. Area Transit Auth.*, 949 F. Supp. 2d 214, 219 (D.D.C. 2013) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)) (cleaned up). Even so, "a '[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than resolving a 12(b)(6) motion for failure to state a claim.'" *Turan Petrol., Inc. v. Ministry of Oil & Gas of Kaz.*, 406 F. Supp. 3d 1, 8 (D.D.C. 2019), *aff'd*, No. 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25, 2022) (quoting *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)). In addition, a court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction" and "consider facts developed in the record beyond the

complaint." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (quotation marks and citations omitted). "Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

### C. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), "a plaintiff bears the burden of 'alleg[ing] specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations.'" *Fuentes-Fernandez & Co., PSC v. Caballero & Castellanos*, PL, 770 F. Supp. 2d 277, 280 (D.D.C. 2011) (quoting *Moore v. Motz*, 437 F. Supp. 2d 88, 90–91 (D.D.C. 2006)). A court "is not required to treat as true all of plaintiffs' allegations when determining whether personal jurisdiction exists." *Id*.

### IV. ANALYSIS

Plaintiffs argue first that a purported waiver of sovereign immunity by South Sudan in response to *Chang* should also apply as a waiver of sovereign immunity in the instant suit, either because: (1) Plaintiffs Bunch and Levin were among the *Chang* plaintiffs when South Sudan made its statements inviting suit, thereby waiving sovereign immunity as to their claims even though they later broke off from the *Chang* plaintiffs to file their own suit, Pls.' Opp'n at 4–6; and (2) even if Plaintiffs were not within the *Chang* group—because, for example, Plaintiff Renzi was not a part of the *Chang* suit at the time, *id*., the waiver from *Chang* should nevertheless extend to all "relevant plaintiffs who were victims of the Terrain Hotel Attack, including the Plaintiffs in the instant case," Compl. ¶ 101. Relying in part on international law, Plaintiffs contend that they "are part of the victim group to whom Defendants waived sovereign

immunity under the international legal principle of acquiescence." Pls.' Opp'n at 12.[3]  But, of course, both of Plaintiffs' arguments rely on the premise that there was such a waiver of sovereign immunity in *Chang*, and the Court has already found that there was no waiver in its opinion in *Chang*.  *See* 2023 WL 2351726, at *6.  This argument thus fails, in light of *Chang*.

In the alternative, Plaintiffs claim that, even if South Sudan did not explicitly waive its sovereign immunity, it did so implicitly.  Pls.' Opp'n at 14–15.  The bases for such a purported implied waiver are unclear.  Presumably, Plaintiffs again rely on South Sudan's interactions with the *Chang* plaintiffs, as well as on their own one-sided communications to Defendants.  *See* Pls.' Opp'n at 15 ("Defendants gave repeated instructions to counsel in *Chang* that the Terrain Attack victims should bring suit in the United States.  Defendants' subsequent actions further indicated their amenability to suit and intent to waive immunity.").  Plaintiffs add that they were also included in a settlement offer from South Sudan made in October 2021.  Compl. ¶ 102.  But these communications are insufficient for finding a waiver of sovereign immunity.

Pursuant to the FSIA, "[a] foreign state shall not be immune from the jurisdiction of courts of the United States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  Accordingly, "[a] foreign sovereign

---

[3] Plaintiffs claim that "[t]his interpretation of acquiescence is supported by U.S. case law," and cite to *Owens v. Republic of Sudan,* 174 F. Supp. 3d 242 (D.D.C. 2016) and *Simpson ex rel. Estate of Mostafa Fahmy Karim v. Socialist People's Libyan Arab Jamahiriya*, 470 F.3d 356 (D.C. Cir. 2006) in support of their assertion.  Pls.' Opp'n at 13.  But neither case stands for the proposition proposed by Plaintiffs.  They do not indicate that a defendant that remains silent and does not interact with a plaintiff runs the risk of waiving sovereign immunity, nor do they suggest, as Plaintiffs claim, that a silent defendant acquiesces to the inclusion of plaintiffs in a certain class of disputes or claims as to a particular subject matter.  Rather, the courts in the cases were merely commenting on the parties' burden of production and stating that, "when a plaintiff provides evidentiary support for its allegations, based on the assumption that it has the burden of production, a defendant that chooses to remain silent risks denial of its motion to dismiss."  *Simpson*, 470 F.3d at 361; *Owens,* 174 F. Supp. 3d at 276.

will not be found to have waived its immunity unless it has clearly and unambiguously done so." *World Wide Mins., Ltd. v. Republic of Kaz.*, 296 F.3d 1154, 1162 (D.C. Cir. 2002); *see also Wye Oak*, 24 F.4th at 691. In other words, "[a]n express waiver under section 1605(a)(1) must give a 'clear, complete, unambiguous, and unmistakable' manifestation of the sovereign's intent to waive its immunity." *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1292 (11th Cir. 1999) (citation omitted). For the reasons already explained in *Chang*, South Sudan's communications with the *Chang* plaintiffs do not constitute an explicit waiver. *Chang*, 2023 WL 2351726, at *4–5. Likewise, South Sudan did not "clearly and unambiguously" waive sovereign immunity in the United States by not responding to Plaintiffs' letters or by offering to settle its internal legal dispute with the Terrain Attack victims, without any indication that the settlement offer would have any relation to possible claims in the United States. *World Wide Mins.*, 296 F.3d at 1162.

With respect to the implied waiver exception, "implicit in § 1605(a)(1) is the requirement that the foreign state have *intended* to waive its sovereign immunity." *Khochinsky v. Republic of Poland*, 1 F.4th 1, 8 (D.C. Cir. 2021) (emphasis in original) (citation omitted). Specifically, the D.C. Circuit has "found the requisite evidence of a foreign state's intent to qualify as an implied waiver of sovereign immunity" in only three scenarios: "(i) the state's executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (ii) the state's filing a responsive pleading without asserting sovereign immunity; or (iii) the state's agreeing to submit a dispute to arbitration in the United States." *Id.* at 8–9 (quoting *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021)) (cleaned up).

Plaintiffs recognize that the current case does not fit into any of these three recognized forms of implied waiver. *See* Pls.' Opp'n at 15. "Courts have been reluctant to stray beyond

10

[the three recognized] examples [of implied waiver] when considering claims that a nation has implicitly waived its defense of sovereign immunity." *Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 18-cv-812, 2020 WL 1308357, at *8 (D.D.C. Mar. 19, 2020), *aff'd sub nom. Ivanenko v. Yanukovich*, 995 F.3d 232 (D.C. Cir. 2021) (quoting *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1174 (D.C. Cir. 1994)). The Court cannot conclude that South Sudan implicitly waived its sovereign immunity by not responding to Plaintiffs, and, as in *Chang,* will accordingly decline to stray from the established forms of implied waiver in this case.

Absent such waiver or any other applicable exception under the FSIA, the Court lacks subject matter jurisdiction over this case. Without subject matter jurisdiction, the Court also does not have personal jurisdiction here. Having concluded that Defendants did not waive their sovereign immunity to suit and that the Court thereby lacks subject matter and personal jurisdiction over this case, the Court must dismiss this case.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 14, 2023                                                                        RUDOLPH CONTRERAS
                                                                                                                United States District Judge